Good morning, Your Honors. May it please the Court, Ben Wiesinger on behalf of the petitioner Gloria Monreal De Leon. To begin, I want to make sure that it's noted for the record that my client is currently detained in ICE custody. She was not when this case began, but she is now. The government's going to have a hard time here getting around the words of the immigration judge in this case. I'm just not believing this account. I don't have to give her full credit for testimony for that reason alone, referring to my client's criminal past. And finally, in his order, the Court is unwilling to give her any credibility. The standard for credibility is not based on one factor alone. It's the totality of the circumstances, and that's what this case is really all about. And I'd like to suggest that the BIA, in upholding the court's, upholding the judge's decision, relied on a decision and an opinion of this Court that has been effectively overruled. I'm going to butcher this pronunciation, Unua Kaulu, I believe. I always called it the uncle case, because it was easier for me to remember. It's a pre-Real ID Act case, first of all. And the Usually that's helpful. Correct. In this case, I believe subsequent precedent, and effectively overrules Unua Kaulu, not just because of Why don't we, let me, let me just get right down to the heart, please. Part of the issue on on the credibility finding, there's several parts of the credibility finding. But the one that you seem to, to address most in your brief was the IJ's reliance on her criminal background. Yes. Record of convictions. Yes. And it's unclear to me whether she just has a couple of convictions for shoplifting, a drug-related conviction, and it looks like some traffic-related convictions. Okay? Now, if that's all she's got, then, and you might have some, there might be some weight to your argument, but it also looks like she might have a criminal forgery conviction. The 1999 Utah case, which Which I looked carefully at all the records and read the evidence in the record, and it's not, the IJ says that she had such a conviction and the BIA relies on it. And if she did have a conviction for forgery out of Utah, I mean, that's a classic kind of conviction that a trier of fact might consider in, could reasonably consider in judging the person's credibility. The problem is, as you're, as you pointed out, there's no evidence of a is that the charges were either dropped or dismissed. Well, how do we, how do we know that? She testified that she had suffered that conviction. She also testified, I believe, that she pled guilty to that and served 30 to 35 days in jail for that Utah conviction. Is that correct? It's in there somewhere to that effect. So you're asking us to question whether that existed or not? What? There's, there's no She testified that she pled guilty and served jail time for it. We don't know what she actually pled guilty to. There's, again, there's no record of a court proceeding there. We don't know whether there was pretrial detention and ultimately the case got dismissed. We simply don't know the answer to that question. The government being in the best position to obtain conviction records, which they did in other, for the other shoplifting issues, you know, didn't bother to look into this part of my client's past, which in full disclosure includes yet another shoplifting conviction suffered this year. Well, they, they, they didn't, the basis for her removal is, was not that she'd suffered some sort of aggravated felony or anything like that. No, Your Honor. Simply entry without inspection. Right. So the, the crux of the case is whether the IJ's adverse credibility determination is rightfully based upon this criminal history. And the, the judge, whom I've known for years, simply, you know, latched onto this, this criminal history and said, well, I don't have to give your credit, your testimony anyway whatsoever for no, no other reason but this. And that is simply not the test for whether somebody's testimony is credible or not. Well, let me ask, how did even the, so in the, I guess it's listed in the I-213, this forgery conviction, right? You know what? It's, it's mentioned in one I-213. It's absent from another one, the most recent one produced by the government. I don't know what to say to that if, because it's, it's... Well, I'm looking at the one dated 3-11-2015. And that's at AR... Well, let's see. I'm not exactly sure, but I think it's at AR-108. Okay. I think. But it's there. I mean, it's there. It says forgery, unknown forgery. I can't, and I tried to figure out, because you, somebody represented at the hearing that that had been dismissed or something. Yes. But it doesn't, she testified that she had served time. All right. So the record in this case is, as to that particular criminal issue, is simply unclear. And I don't want to get into unclear, burdens of proof, Maria Naleria versus Gonzalez and all that, and all the recent stuff, because I think that had to do with convictions and burden of proof of eligibility for relief from removal. This happens to be a burden of proof for time, place, and manner of entry. And there's nothing in the record, or the record does not have evidence to support the conclusions of either the judge or the Board of Immigration Appeals in that matter, or in that regard. Well, they just, they just, it was her burden to prove her, the manner of entry. Yes. Time, place, and manner. That was on her, that was her burden. Yes. She offered her explanation. Yes. How she entered. They disbelieved her, citing that her testimony was implausible about how she entered in 2000. They mentioned that the IJ relied on her criminal history. If all he had to rely on were her record, the record of shoplifting convictions, I probably would agree with you that those don't demonstrate a tendency to fabricate and lie. But when you have a forgery conviction, that's a classic example of a conviction that one could look to to assess credibility. And three, there's reference in the IJ's decision, a little bit more so in the BIA's decision about the I-213. And the absence of any representation by her on how she entered the country. Correct. And she adequately explained that in her testimony. The officer who questioned her asked about her first entry, and she answered honestly. It was in 1988, excuse me, 1988, without inspection. And the officer didn't ask her any more questions about any subsequent departures or reentries. So there's no reason for, there was no, the officer wasn't, you could say the officer wasn't under any obligation to follow up and ask those other questions. If by, you know, entering without inspection in 1988 and not having any current documents on her to show that she's lawfully admitted, well, then she's automatically removable. And so they served her with her notice to appear. And so it's not surprising to me that all the I-213 reveals is an initial unlawful entry, and then the NTA says unknown date, unknown location. That's pretty standard operating procedure for ICE in the field. They don't get into those details. And we don't have a record of sworn statement here. Like we see sometimes in asylum decisions when somebody first enters the country, and there's a record of sworn statement if they, you know, claim a fear or don't claim a fear. We don't have that here. All we have is an I-213, which, you know, has been held to be reliable in the absence of evidence to the contrary. And here we have evidence to the contrary. You know, my client testified that she later entered with inspection. And, Your Honor, if I may address that plausibility portion of the judge's decision. How is it implausible that my client was allowed to enter, you know, without being asked for documents, but Ms. Keelan Tan was allowed? Her explanation was plausible. What's the difference? There is none. Okay. The seminal decision by the board, matter of Keelan Tan, they were in a car. The driver was asked a couple questions. Keelan Tan was not. And they were allowed entry. There's no difference here. Okay. And yet the judge said, you're plausible. You're not plausible. Okay. And the only difference is my client's record of conviction. Unless there are any other questions, I'd like to save some time for rebuttal. That's fine. The court should find that the immigration judge's adverse credibility determination here was supported by substantial evidence. I just want to point out with regards to the forgery crime, she did testify during her merits hearing at page 94 through 95 of the record that she committed the offense by using a debit card that did not belong to her. So irregardless of whether or not we have a conviction here, she has testified to the underlying crime of forgery or debit card fraud. Also, I just want to stress also that the government did not have the burden of proving the conviction because she is the applicant for adjustment of status. She would have the burden to show that a mandatory ground of denial does not apply. So that's why you have in the record her listing out all the possible criminal grounds that apply. Well, I don't recall exactly what happened at the hearing, but it seems that if the government has a conviction, forgery, that that is a basis on which to discredit her testimony. And it seems like the government should produce the record. But she has the burden under it. No, I understand. She has the ultimate burden on the whole. But my point was that your argument, if the government's position is she's not credible, Judge, she's not credible because, one, her story is implausible. Two, she's a convicted forger. I don't know what the government argued, but she has all these convictions. And three, her story is inconsistent. I guess the question then is did the immigration judge have to wait on documents that prove up the conviction in order to make a credibility finding based on that criminal issue? And I don't think the immigration judge did because she is admitting to the crime. Your point is it doesn't make any difference whether or not there's an actual conviction. No. I mean, it's the fact of the act that she admitted to using a debit card that did not belong to her, that the credibility statute allows for the adjudicator to, under a totality of circumstances analysis, to take into account any relevant factor that impacts credibility. So certainly her admission to committing debit card fraud without a conviction would be a relevant factor for purposes of credibility. But she did testify, though, that she served some time. And she did, 30 to 35 days in jail, yes. And it does seem like it was a very old conviction, which also might explain why we just don't have records for it. And, you know, even 9213, it says dismissed without prejudice. But it's hard to know what happened with that offense. So I would also like to, you know, explain that, you know, the IJ can base a credibility determination on the fact that the applicant's account is inherently implausible. And so it was proper here for the immigration judge to take into account that, you know, Monreal's account that she was asked about where she went to Mexico, what she was doing there, but was not asked for her entry documents is simply not a plausible situation. The petitioner argues that this was pure speculation and conjecture on the part of the immigration judge. But an immigration judge sitting in a border state and routinely charged with analyzing removability does, I think, build up expertise and experience in evaluating claims about admission and entry. And so the fact is— Well, let me ask you this. Wouldn't it be reasonable, then, for the IJ to, like, point to some policy statements by the border, you know, by the border? I think— They call it the border— I certainly wish that the record had some point— There's a policy statement here that requires every agent at the border checkpoints, at the crossing, to ask. It would be ideal if that had happened. But, I mean— I mean, what you're saying is, well, he just knows. He knows because it is he sees these claims in his courtroom, and he's not seeing them with any occurrence. It's the absence of these claims or the rarity of Monreal's claim that is informing his decision. But also, INA 212A7Ai, it's the ground of inadmissibility that says if you, you know, attempt to enter the U.S. as an immigrant without a valid entry document, you're inadmissible. And that, you know, that puts—that says what, you know, we are—our border officials are asking for entry documents at the port of entry. It just seems a common-sense notion of how the border works that, especially if a border official is taking the time to talk with you and asks about your going to Mexico and your purpose of your trip, that they would also inquire about your entry documents. In one of her—part of her testimony, I forget if it was, yeah, maybe it was 88, where she testifies that when she came across, they had red light and green lights to stop people, and then they'd turn on the green light, and people would go through. I think that was one of the times that she came in. I don't see it on page 88, but that does sound familiar to me. Yeah. But that makes sense. I mean, that, you know, there's usually — there could be a large crowd of people who are — want to enter the country, and they can't — I guess they could, but, you know, they stop for a while, and they then turn on the green light, and people come through. And I guess they could just randomly pick people. The fact that this happened twice, though, to Ms. Monreal, that she had been waved through twice, it also strains a bit credulity. I also want to mention on page 119 is her written statement. And it says during — she's describing the 2000 encounter, and she actually states, quote, I was not asked any questions. So her — she, you know, has an internal inconsistency or an inconsistency between her written statement and between her testimony as to whether she was even asked any questions at all during that 2000 border entry. This provides — you know, this — it's a pretty glaring inconsistency that provides further evidence as to why the record does not compel the conclusion that Monreal was credible in explaining the time, place, and manner of her entry. I also — I don't believe the petitioner's counsel addressed it during his argument, but I do want to talk about the motion to remand that was filed to pursue cancellation of removal. The board did not abuse its discretion in denying petitioner's motion to remand. In order to establish statutory eligibility for cancellation of removal, an applicant has to show a number of things — 10 years of continuous physical presence, good moral character, the absence of certain criminal convictions, and exceptional and extremely unusual hardship to a qualifying relative. But here, Monreal failed to file with her motion the required application for cancellation of removal, as well as any supporting evidence that she meets these statutory requirements. As a result, the board was correct in noting that Monreal simply had not established a in view of her lengthy criminal history. I do think the board, to the extent it relied on the forgery conviction, may have been incorrect because it's outside of the 10-year period. But either way, she does have a lengthy criminal history involving theft, the controlled substance conviction, and driving on a suspended license. Here, though, she failed to produce any evidence of her own to establish that she had good moral character in light of this ample negative evidence about her good moral character. The adverse credibility determination and the crimes. As a result, she failed to meet her burden of proof for purposes of a motion of remand of showing a reasonable likelihood that she would be found to have good moral character. In conclusion, the court should affirm both the adverse credibility determination and the motion to remand denial for these reasons. Thank you. Okay. I'll just pick up where my colleague left off. The board didn't deny the motion to remand for lack of establishment of a prima facie case. That's not in the board's order. The board's order says that they the board finds it unlikely that my client can establish good moral character as required by statute. They actually reference the statute, right? And that statute, 8 U.S.C. 1101 F7, is what requires or what deals with, for example, aggregate time in jail during the requisite period, the requisite 10 years. The board's language, unlikely to find statutory eligibility, in quotes, clearly implies that statutory bar, but denies remand without allowing the parties to fully develop that record. How many days in jail has she spent? I believe it's close. I believe it's close enough to allow for a remand to determine, in the first instance, whether she has to spend additional funds to pay for another application for which she may or may not be eligible. So the lack of an application puts the cart before the horse in this case. The board clearly decided to deny the motion to remand based upon their conjecture without supporting evidence, without allowing the facts to be developed in the record, their conjecture that it was unlikely that my client would be able to meet the requirements. That simply flies in the face of well-established precedent of what they, of how a motion to remand should be decided. And the board, as I said, never said the words prima facie case. I'd also like to just note that the last time I came back from Mexico, I wasn't asked for my passport, and this was around 2000. Maybe it's because I'm white. Maybe it's because I speak English. But this whole idea that border agents check every single document on the border through, I believe, El Paso rivals San Ysidro as the busiest border crossings in the world by a factor of at least five. The idea that, and I referenced this in my brief, that the border patrol officers actually do inspect or swipe every single border crosser card, that is what's more implausible than my client's testimony. With that, if there are any other questions, I'd be happy to answer. No, thank you. In that case, Your Honors, I'd ask that the court grant the petition for review and remand the record for an evidentiary hearing on my client's applications. Okay. Thank you. Thank you. And the matter is submitted at this time.
judges: Fernandez, Paez, Choe-Groves